## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## EASTERN DIVISION

No. 4:13-CV-00093-D

| | |
|---|---|
| MARILYN B. MASON, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings

[DE-20, -25] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Marilyn B.

Mason ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial

review of the denial of her application for a period of disability and Disability Insurance Benefits

("DIB"). Claimant also filed a response to the Commissioner's motion [DE-28], and the pending

motions are now ripe for adjudication. Having carefully reviewed the administrative record and the

motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for

Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be

denied, and the case be remanded to the Commissioner for further proceedings consistent with this

Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on July 7, 2010,

alleging disability beginning February 1, 2003. (R. 13, 141). Her claim was denied initially and

upon reconsideration. (R. 13, 64, 83). A hearing before the Administrative Law Judge ("ALJ") was

held on November 2, 2011, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 24-42). On January 30, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 10-19). On February 15, 2013, the Appeals Council denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth

in 20 C.F.R. § 404.1520, under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails

at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65

F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of

the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other

work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with

the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies

four broad functional areas in which the ALJ rates the degree of functional limitation resulting from

a claimant's mental impairment(s): activities of daily living; social functioning; concentration,

persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required

to incorporate into his written decision pertinent findings and conclusions based on the "special

technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges that the ALJ improperly evaluated the medical opinion of

Plaintiff's treating physician in violation of 20 C.F.R. § 404.1527. Pl.'s Mem. [DE-21] at 7-8.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 15). Next, the ALJ determined Claimant had the following severe impairments: status post breast cancer surgery, obesity, diabetes mellitus, status post right knee osteoarthritis and tendon repair. *Id.* The ALJ also found Claimant had nonsevere impairments of dermatitis, heart problems, musculoskeletal, and left heel problems. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15-16).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the additional limitations of carrying twenty pounds occasionally and ten pounds frequently, never climbing ladders, ropes, or scaffolds, but occasionally climbing stairs, kneeling, and crouching, frequently performing other postural activities, and avoiding hazards. (R. 16-18). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 18). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work as a teacher assistant. *Id.* Thus, the ALJ found Claimant was

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

not disabled. (R. 18-19).

**B.     Claimant's Testimony at the Administrative Hearing**

Claimant is a high school graduate with two years of college education. (R. 28). She last worked in 2003, as a teacher assistant, where her duties included monitoring, supervising, playing with, and cleaning up after children, a position she held for approximately twenty-nine years. (R. 28, 31-32). Claimant's knee impairment interfered with her ability to perform her job duties and she retired one year early. (R. 29, 31). Claimant has severe pain and swelling in her right knee, which limits her ability to sit, stand or walk and had an arthroscopic procedure on her right knee in 2003. (R. 29). Claimant utilized a cane, and sometimes a walker, post-procedure for balance and stability and had to sit down frequently. (R. 30-31). She elevated her legs and took naproxen and Osteo Bi-Flex to reduce pain and inflamation in her legs and feet and wore compression stockings to improve circulation. (R. 32-34). Claimant limited her driving because it put pressure on her knee. (R. 30). Claimant also had bone spurs removed from her feet and plantar fasciitis, which has improved with reduced walking. (R. 33). Claimant's doctor recommended that she wait as long as possible to have knee replacement surgery because, due to her weight, she might require a second knee replacement later. *Id.* In 2010, Claimant underwent right knee replacement. (R. 29).

**C.     Vocational Expert's Testimony at the Administrative Hearing**

Leanna Hollenbeck testified as a VE at the administrative hearing. (R. 34-40). The VE first testified that Claimant's past work as a teacher assistant was classified as a skilled, light job, but that Claimant indicated she lifted in the medium category. (R. 35). The VE also indicated there are no jobs to which the skills of teacher assistant would transfer in the sedentary category. *Id.* Next, the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work

5

experience as Claimant and posed three hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform light work involving light exertion, lifting 20 pounds occasionally and 10 pounds frequently, with no climbing of ladders, ropes or scaffolds, occasional climbing of stairs, kneeling and crouching, and frequent performing of other postural activities, all while avoiding moderate exposure to hazards. (R. 35-36). The VE responded that such an individual could not perform the work as Claimant reported to have performed it, but could perform the work as was described in the Dictionary of Occupational Titles ("DOT"). (R. 36).

Next, the ALJ asked whether there are any other jobs that such an individual could perform. *Id.* The VE responded that there are jobs such as mail clerk in a business (DOT # 209.687-026), office helper (DOT # 239.567-010), and parking lot attendant (DOT # 915.473-010) that the hypothetical individual would be able to perform. *Id.* The ALJ then asked the VE to add to the hypothetical the requirement of sitting for less than five minutes after standing or walking for one hour. *Id.* The VE responded that such a requirement would not impact the ability to perform the above listed jobs, because they offer the opportunity to alternate positions. (R. 37). The ALJ then asked the VE to consider the impact such a restriction would have on the ability of the individual to perform the past relevant work in the DOT. *Id.* The VE answered that there would be times when the individual would not be able to sit down and could not alternate positions at will, because of the various activities she was performing throughout the day. *Id.*

The ALJ also inquired as to the effect on the sedentary occupational base if it were assumed that the individual is limited to sedentary exertion with the same other nonexertional requirements. *Id.* The VE responded that the individual could perform jobs such as surveillance system monitor

6

(DOT # 379.367-010), order clerk, food and beverage (DOT # 209.567-014), and table worker (DOT # 739.687-182). (R. 37-38). Lastly, the ALJ asked the VE if her testimony contained any discrepancies from the DOT. (R. 38). The VE responded that the comment made about the opportunity to alternate positions is based on her experience working with clients and is not addressed in the DOT. *Id.*

Claimant's counsel next questioned the VE as to whether any of the positions listed in the first hypothetical would be able to accommodate the need to elevate the legs during the workday. *Id.* The VE responded that such an ability would be a job accommodation that some work settings would allow and others would not. *Id.* Claimant's counsel then asked whether the jobs listed in the first hypothetical require frequent sitting, or if they allow for a sit and stand accommodation. *Id.* The VE responded that the parking lot attendant would be sitting for most of the time but could stand for short breaks during the day and walk around at times, while the office helper and mail clerk jobs require the person to sit and stand, alternating throughout the day. *Id.*

## V. DISCUSSION

Claimant contends the ALJ erred by failing to evaluate the February 2003 medical opinion of her orthopedic surgeon Dr. Robert Blair. Pl.'s Mem. at 7-8. The Commissioner contends that Dr. Blair's opinion is not supported by the record. Def.'s Mem. [DE-26] at 5-10. The undersigned agrees with Claimant that the ALJ did not adequately indicate or explain the weight, if any, he gave to the opinion of this treating physician and, thus, the case requires remand.

The rules regarding the weight to be accorded medical opinion evidence and the ALJ's duty to explain such weight are well established. Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight

7

to the opinion of an examining medical source than to the opinion of a non-examining source. 20 C.F.R. § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. 20 C.F.R. § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Id.* Similarly, "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); *see Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted). However, the ALJ must give "good reasons" for the weight assigned to a treating source's opinion. *See* 20 C.F.R. § 404.1527(c)(2); *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (per curiam). Where a physician presents relevant evidence to support his opinion, his opinion is entitled to more weight. 20 C.F.R. § 404.1527(c)(2).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL

8

2565245, at \*8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* SSR 96-2p, 1996 WL 374188, at \*5 (July 2, 1996); SSR 96-6p, 1996 WL 374180, at \*1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at \*8.

"While the ALJ must give a treating physician's medical opinions special weight in certain circumstances, the ALJ is under no obligation to give a treating physician's legal conclusions any heightened evidentiary value." *Morgan v. Barnhart*, 142 F. App'x 716, 722 (4th Cir. 2005) (unpublished) (citations and quotations omitted); *see* 20 C.F.R. § 404.1527(e)(3). However, the ALJ is not free to ignore a treating physician's legal conclusions and must still "'evaluate all the evidence . . . to determine the extent to which the [treating physician's legal conclusion] is supported by the record.'" *Morgan*, 142 F. App'x at 722 (quoting SSR 96-5p, 1996 WL 374183, at \*3 (July 2, 1996)) (alteration in original). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at \*2 (E.D.N.C. Sept. 24, 2013) (citing *Hill v. Astrue*, 698 F.3d 2253, 1159-60 (9th Cir. 2012); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747, 750 (6th Cir. 2007); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006)). However, "[i]n some cases, the failure of an ALJ to explicitly state the weight given to a medical opinion constitute harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." *Bryant v. Colvin*, No. 5:11-CV-648-D, 2013 WL 3455736, at \*5 (E.D.N.C. July 9, 2013) (citations and quotations omitted).

Here, the opinion at issue appears in a February 19, 2003 treatment note in which Dr. Blair stated as follows:

9

The patient is five days post arthroscopy for severe degenerative disease, patellofemoral and medial compartment, with significant medial meniscectomy. Portals are healing nicely, excellent range of motion. Consider[ing] the degenerative disease, she and her husband wonder about her returning to work. I think it unlikely that this individual with this knee and her weight will be able to continue participate in any kind of work which requires a good bit of standing or walking and I strongly recommend that she consider either sedentary work or if that's not available, consider the possibility of applying for medical retirement. Realistically, I don't think she can continue as she has in the past. . . . She's aware that she needs weight loss and motion.

(R. 489). Claimant correctly asserts that nowhere in the decision does the ALJ discuss or refer to

the 2003 opinion by Dr. Blair, although the decision does contain the following summary of the

medical treatment records from this provider with specific citation to the exhibit where the opinion

at issue is located:

The record includes treatment records for multiple impairments, including right knee arthroscopic surgery in February 2003. The claimant was reported to be improved, and by May 2003, tolerating weight bearing. However, treatment providers recommended total knee replacement due to residuals of obesity. Treatment notes from July 2005 indicated the claimant was doing well despite her weight, without effusion and little discomfort reported. The claimant was prescribed only Naproxen in May 2008 due to right knee pain (Exhibit 1F, 7F).

(R. 17). The ALJ did discuss a "1.02 Listing Questionnaire" completed by Dr. Blair on September

13, 2011, wherein Dr. Blair affirmatively answered six questions indicating that Claimant (1) has

a major dysfunction of a weight-bearing joint; (2) has an impairment characterized by gross

anatomical deformity; (3) has chronic joint pain and stiffness with signs of limitation of motion or

other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable

imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s); and (4) is

unable to ambulate effectively as a result of her impairment. (R. 843). Dr. Blair further indicated

that he treated Claimant prior to her date last insured of December 31, 2008, that her limitations were

10

present at least on or before that time, and that he continued to treat her since that time. *Id.* The ALJ discounted Dr. Blair's 2011 opinion, noting it was rendered "well after the relevant period" and further explaining that the record indicated Claimant's condition did not worsen until September 2010, almost two years after her date last insured. (R. 18).

Despite the ALJ's discussion of some of Dr. Blair's treatment notes and Dr. Blair's 2011 opinion, the ALJ failed to discuss or assign weight to Dr. Blair's 2003 opinion that, due to Claimant's knee and her weight, it was unlikely Claimant would be able to return to her past work, or any work requiring significant standing or walking, and that she should find sedentary work or retire. (R. 17-18). The ALJ must evaluate every medical opinion received, 20 C.F.R. § 404.1527(c), and the failure to do so was error. *See Moreno v. Colvin*, No. 4:12-CV-143-D, Order [DE-31] (E.D.N.C. Sept. 6, 2013) (remanding case for ALJ's failure to mention treating physician opinion given importance of properly analyzing physician opinions); *Bryant*, 2013 WL 3455736, at *6 (adopting magistrate judge's recommendation remanding case, despite the ALJ's summary of the physicians' evidence, because the ALJ "fail[ed] to indicate . . . the weight he accorded all opinions . . . and the reasons for such weight"). The Commissioner does not appear to dispute that Dr. Blair's 2003 statement qualifies as a "medical opinion,"[2] but rather provides several reasons why the court should find harmless the ALJ's error in failing to consider the opinion. *See* Def.'s Mem. at 5 (arguing that Dr. Blair's "opinion was not entitled to much weight and is not supported by the record.").

---

[2] "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Dr. Blair is a physician and the statement at issue reflects his judgment about the severity of Claimant's knee impairment, her prognosis, and what he believes she can and cannot do in light of her impairment. Thus, the statement at issue qualifies as a medical opinion as defined by the regulations.

First, the Commissioner reasons that the ALJ "did not give much consideration to Dr. Blair's first opinion" because it was given at the onset of the alleged disability period and the ALJ "had records for the next *six years* of alleged disability to review to see what actually happened." *Id.* at 6 (emphasis in the original). Such reasoning is flawed where the ALJ failed to state what, if any, consideration he gave Dr. Blair's opinion, and it is not the role of the court to guess as to what level of consideration the ALJ gave a medical opinion or why the ALJ may have chosen to discount it. *See Dickerson v. Colvin*, No. 2:13-CV-14-D, 2014 WL 1207851, at \*2 (E.D.N.C. Mar. 24, 2014) ("The Commissioner, not this court, is to make the initial determination about how much weight to afford the opinion of a treating physician."); *Abernathy v. Astrue*, No. 4:08-CV-99-FL, 2009 WL 1578533, at \*3 (E.D.N.C. June 3, 2009) ("[T]he ALJ may have had a proper reason to discount these post-DLI [medical opinion] records. However, the court will not undertake to hazard a guess as to what such valid reasons might be.").

Next, the Commissioner suggests that the ALJ's consideration of Dr. Blair's 2011 opinion makes harmless his failure to consider Dr. Blair's 2003 opinion. Def.'s Mem. at 6. SSR 96-2p instructs that where there are multiple opinions from a single treating source, the ALJ need not always consider each opinion separately.

It is not unusual for a single treating source to provide medical opinions about several issues; for example, at least one diagnosis, a prognosis, and an opinion about what the individual can still do. Although it is not necessary in every case to evaluate each treating source medical opinion separately, adjudicators must always be aware that one or more of the opinions may be controlling while others may not. Adjudicators must use judgment based on the facts of each case in determining whether, and the extent to which, it is necessary to address separately each medical opinion from a single source.

SSR 96-2p, 1996 WL 374188, at \*2 (July 2, 1996); *Bryant*, 2013 WL 3455736, at \*5. However, in

12

this case, the 2003 opinion was distinct from the 2011 opinion and required separate consideration. For example, the ALJ discounted the 2011 opinion, in part, because it was rendered "well after the relevant period." (R. 18). Yet, the 2003 opinion was rendered during the relevant period and potentially corroborates the 2011 opinion, which stated that Dr. Blair treated Claimant prior to her date last insured of December 31, 2008, and that her limitations were present at least on or before that time. (R. 489, 843). Further, while the Commissioner asserts that Dr. Blair's 2011 opinion did not suggest when Claimant became unable to perform light work, Def.'s Mem. at 6-7, the 2003 opinion certainly can be read to suggest that Claimant could not perform light work at that time and would unlikely be able to do so in the future (R. 489), which to some extent runs counter to the ALJ's decision. *See Dew ex rel K.W. v. Colvin*, No. 4:12-CV-129-D, 2013 WL 4523617, at \*6 (E.D.N.C. Aug. 27, 2013) (remanding case where ALJ failed to consider treating medical opinion that countered ALJ's determination); *Bryant*, 2013 WL 3455736, at \*6 (remanding case for failure to properly evaluate all treating opinions where the opinions were not consistent with the ALJ's disability determination); *cf. Love-Moore*, 2013 WL 5350870, at \*2 (finding the ALJ's failure to weigh the opinion of a non-treating physician was harmless error where opinion was consistent with the ALJ's determination). Thus, under the facts of this case, the ALJ's evaluation of Dr. Blair's 2011 opinion did not obviate the need for the ALJ to consider Dr. Blair's 2003 opinion.

Finally, the Commissioner reasons that Dr. Blair's 2003 opinion was merely a prediction about whether Claimant would recover and be able to return to light work, and that the record shows that Claimant did recover sufficiently. Def.'s Mem. at 7-10. In support of this argument, the Commissioner notes that "Dr. Blair was correct that Ms. Mason would one day need knee replacement as she indeed needed that. The question, however, is whether that was based on

13

deterioration or already needed." *Id.* at 8 n.5. Dr. Blair's 2003 opinion is probative of this very question and, given the degenerative nature of Claimant's knee impairment coupled with the fact that Claimant ultimately required a total knee replacement, the ALJ's failure to evaluate Dr. Blair's 2003 opinion that Claimant would not likely recover to the point of performing more than sedentary work was not harmless error. Moreover, Dr. Blair was Claimant's treating orthopedic surgeon, and the court cannot overlook the "importance of analyzing a treating physician's opinion." *Moreno*, No. 4:12-CV-143-D, Order [DE-31].

Accordingly, the ALJ's error in failing to mention or weigh the 2003 medical opinion of Dr. Blair was not harmless error and requires remand. *See Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) ("Just as it is not our province to 'reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ],' it is also not our province—nor the province of the district court—to engage in these exercises in the first instance.") (internal citation omitted). On remand, it is within the ALJ's discretion to accept or reject the opinion in whole or in part, so long as he clearly articulates valid reasons for so doing.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-20] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-25] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District

14

Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 29th day of July 2014.

Robert B. Jones, Jr.
United States Magistrate Judge